IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERTS TECHNOLOGY GROUP, INC. | : CIVIL ACTION :  :  |
| v. | :  : NO. 14-5677 |
| CURWOOD, INC. | : |

## ORDER-MEMORANDUM

**AND NOW,** this 17th day of May 2016, upon consideration of Defendant's Motion *in limine* to preclude hearsay evidence (ECF Doc. No. 187), Plaintiff's Opposition (ECF Doc. No. 196), following oral argument and finding no hearsay exception applies, it is **ORDERED** Defendant's Motion *in limine* (ECF Doc. No. 187) is **GRANTED** and Plaintiff may not introduce testimony or those portions of Exhibits 19, 20 or 21 consisting of emails or communications from protected accounts who are not present to testify under oath, or through exhibits such as lead distribution forms or statements from in-court witnesses based on actions taken "in reliance" upon hearsay.

## *Analysis*

After obtaining the jury's verdict finding food tray manufacturer Curwood, Inc. breached a promise to protect sixty-three (63) potential customers of distributor Roberts Technology Group ("RTG"), we are now preparing for trial on RTG's damages arising from this proven breach. We vacated the first jury's damages award and required a new trial on damages directing the parties to focus on proving both the total lost sales of trays and the costs attendant to the anticipated sales. The question is how RTG will prove the veracity of these anticipated sales from the sixty-three (63) potential customers. It admittedly had no contract with any of the

customers before they may have begun doing business with Curwood or other distributors directly or elected not to purchase trays.

RTG seeks damages based on the amount of trays it would have sold based, in part, on oral representations of potential sales allegedly made by existing customers and potential leads. RTG claims it wrote down some, but not most, of these statements on Defendant Curwood, Inc. ("Curwood's") lead distribution form and the remainder on a list based on a RTG's officer's recollection when preparing to sue Curwood. Regardless of where RTG recorded these anticipated sales numbers, they may be derived in some part from statements allegedly made by the sixty-three (63) protected accounts and then repeated in either lead distribution forms or a chart RTG's officer created for litigation. To the extent they are derived from inadmissible sources, the sales representations in the marketing section of the lead distribution forms based on protected account statements are classic hearsay when introduced to show the truth of the amount of RTG's tray sales. Hearsay is a statement "the declarant does not make while testifying at the current trial or hearing" which "a party offers in evidence to prove the truth of the matter asserted in the statement."[1]

Curwood moves *in limine* to exclude proposed exhibits 19, 20 and 21 and statements made by out-of-court protected accounts allegedly to RTG officers and then later recorded by the RTG officers. RTG answers with three exceptions: the "Records of a Regularly Conducted Activity" exception (the "business records exception"), Rule 803(6); the "Present Sense Impression" exception, Rule 803(1); and the "Then-Existing Mental, Emotional, or Physical Condition" exception, Rule 803(3). We find no exception applies.

---

[1] Fed. R. Evid. 801(c).

### *RTG does not meet the business records exception.*

Under the business records exception, records of a regularly conducted business activity are admissible for the truth of the matter asserted.[2] "The rationale for the exception is that business records are reliable due to the qualities of regularity of record-keeping, the fact that they are relied upon in business, and the fact that employees have a duty and incentive to produce reliable records."[3] Whether emails constitute business records is not a settled area of law. Our Court of Appeals has not addressed the issue but analyses by courts around the country provide an illustrative roadmap.[4] There is no absolute bar to emails being admissible under the business records exception.[5] Nor is there an absolute right to admission of emails under the business records exception.[6] It is "insufficient to survive a hearsay challenge simply to say that since a business keeps and receives e-mails, then *ergo* all those e-mails are business records".[7] "An e-mail created within a business entity does not, for that reason alone, satisfy the business records exception of the hearsay rule."[8] "Email . . . is typically a more casual form of communication than other records usually kept in the course of business, such that it may not be appropriate to

---

[2] Fed. R. Evid. 803(6).

[3] *In re Oil Spill by the Oil Rig DEEPWATER HORIZON*, MDL No. 2179, 2012 WL 85447, *2 (E.D. La. Jan 11, 2012).

[4] *See United States v. Cone*, 714 F.3d 197, 220 (4th Cir. 2013); *Rogers v. Oregon Trail Elec. Consumers Co-op., Inc.*, No. 10-1337, 2012 WL 1635127, *9-10 (D. Or. May 8, 2012); *In re Oil Spill*, 2012 WL 85447, at *2.

[5] *See Cone*, 714 F.3d at 220.

[6] *In re Oil Spill*, 2012 WL 85447, at *3 ("the business records exception does not supply a rule that would render admissible all emails found on a defendant's computer server").

[7] *Id.*

[8] *Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 621 n.163 (S.D.N.Y. 2008).

3

assume the same degree of accuracy and reliability."[9] On the other hand, email is becoming a more popular form of business communication and physical business records are becoming rarer. Given its ubiquity, e-mail business negotiations can be fairly compared to phone discussions between businesspersons in an earlier era except we can retain the written communications in emails. Just because a third party writes an email, however, does not except the email from the hearsay rule. Under any medium, a party must provide specific foundational evidence allowing the Court to find the statements to be trustworthy.[10]

RTG fails to provide specific evidence demonstrating how the emails at issue qualify as business records. It did not depose the protected accounts or subpoena their records. We have no basis to find the emails are regular business records of the protected accounts. We also have no basis to find the emails received by RTG are part of its normal business practices and governed by a policy. RTG show no retention email or electronic data policy. Curiously, RTG claims to have emailed sixty-three (63) lead distribution forms to Curwood, but for unknown reasons, cannot produce those same emails for trial. Absent specific proof, it offers explanations regurgitating the elements of the business records exception. RTG states, "[i]t was a regular practice of RTG to use email exchanges as records of its contract negotiations."[11] Additionally, "RTG regularly conducted business and negotiations through email".[12] These conclusory allegations are insufficient to satisfy the requirements of the business records

---

[9] *It's My Party, Inc. v. Live Nation, Inc.*, No. 09-547, 2012 WL 3655470, *5 (D. Md. Aug. 23, 2012) (excluding email as inadmissible under business records exception).

[10] *Cone*, 714 F.3d at 220.

[11] (ECF Doc. No. 196, at 7.)

[12] (*Id.*)

exception.[13] We have no basis to believe these out of court statements. Absent RTG's specific showing, we decline to apply this exception.

### *Present sense impression does not apply.*

The present sense impression exception applies to out-of-court statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it."[14] To come within the exception, (1) the declarant must have personally perceived the event described; (2) the declaration must be an explanation or description of the event rather than a narration; and (3) the declaration and the event described must be contemporaneous.[15]

RTG contends the protected accounts "made any such statements about their annual need for film and trays while they were perceiving the event or condition of negotiating sales with RTG[.]"[16] This is simply not covered by the present sense impression exception. By RTG's logic, any hearsay statement, made at any point during any negotiation is admissible. Such an interpretation would render the purpose of the exception meaningless.[17] The emails are not contemporaneous descriptions of events and do not fall within the present sense impression exception. RTG does not argue, and we cannot find, its written representations were made while or immediately after the protected account spoke of its potential sales needs for trays and film.

---

[13] *Cone*, 714 F.3d at 220 ("[T]he district court's observation that the e-mails were kept as 'regular operation of the business' is simply insufficient on that basis alone to establish a foundation for admission under Rule 803(6)(B).").

[14] Fed. R. Evid. 803(1).

[15] *United States v. Mitchell*, 145 F.3d 572, 576 (3d Cir. 1998).

[16] (ECF Doc. No. 196, at 9)

[17] *See* Fed. R. Evid. 803(1) Committee Note ("The underlying theory of [the exception] is that substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation.")

5

To the contrary, RTG's officer recalled and wrote down most of these numbers long after the call and shortly before filing this lawsuit. This substantial lapse in time undermines the reliability of the evidence.

### *The state of mind exception does not apply.*

The state of mind exception provides "statement[s] of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, and bodily health)" are not excluded by the rule against hearsay.[18]

RTG argues the protected accounts "expressed their motive, intent, or plan to purchase trays from RTG or RTG representatives."[19] After review, none of the emails at issue in Exhibits 19 and 20 demonstrate the protected accounts' intent or plan to purchase trays. Other than testimony and exhibits referencing Aramark's motive, intent or plan to purchase trays after Curwood's breached its contract to protect this relationship, we have not seen an exhibit showing any other protected account's motive, intent or plan to purchase trays. We have not seen a written statement, or deposition testimony, from a protected account describing their motive, intent or plan to purchase trays. The only exhibits we have seen written by the protected accounts express interest in obtaining pricing information, which is not evidence of their inevitable intent or plan to purchase trays from RTG. RTG's later recollection of statements is not evidence of the state of mind of the protected accounts.

Curwood moved to preclude out-of-court statements and Exhibits 19, 20 and 21. We grant its motion as to statements and trial exhibits subject to RTG's ability to introduce

---

[18] Fed. R. Evid. 803(3).

[19] (ECF Doc. No. 196, at 9)

competent evidence of the sales plans or sales activities of protected accounts in addition to Aramark.

KEARNEY, J.